# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PATRICIA VAN STORY | * | |
| *Plaintiff* | * | |
| | * | |
| v. | * | |
| | * | |
| WASHINGTON COUNTY HEALTH DEPT, | * | |
| MARYLAND DEPT OF HEALTH & | * | |
| MENTAL HYGIENE, | * | Civil No. ELH-17-3590 |
| and | * | |
| LARRY HOGAN, GOVERNOR | * | |
| *Defendants*. | * | |

********

## MEMORANDUM OPINION

In this employment discrimination case, plaintiff Patricia Van Story, D.D.S., has sued her former employer, the Washington County Health Department ("WCHD"), as well as the Maryland Department of Health & Mental Hygiene (the "Department")[1] and Governor Larry Hogan, alleging retaliation, in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1981. ECF 1 ("Complaint"). She seeks "compensatory and economic" damages as well as unspecified equitable and declaratory relief. *Id.* at 6.

Defendants have moved to dismiss the Complaint (ECF 7), supported by a memorandum of law (ECF 7-1) (collectively, the "Motion"). Pursuant to Fed. R. Civ. P. 12(b)(1), defendants seek dismissal on the ground that suit is barred under the Eleventh Amendment, based on sovereign immunity. ECF 7-1 at 4-5. In the alternative, defendants argue, pursuant to Fed. R. Civ. P. 12(b)(6), that § 1981 does not provide an independent cause of action against state actors.

---

[1] In July 2017, the Maryland Department of Health & Mental Hygiene was renamed. It is now known as the Maryland Department of Health. *See* Md. Code (2015, 2017 Supp.), §§ 1-101, 2-101 of the Health-General Article. It is a principal department of the State government. *Id.* § 2-101.

Further, they maintain that even if § 1981 does provide a cause of action, the Complaint fails to state a claim of retaliation. *Id.* at 5-10.

Van Story opposes the Motion (ECF 10) ("Opposition"). The defendants have replied. ECF 11 ("Reply").

No oral argument is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons set forth below, I shall grant the Motion, with leave to amend.

### I. Factual Background[2]

The WCHD is one of twenty-four statutorily created county health departments in Maryland. Md. Code (2015 Repl. Vol., 2017 Supp.), § 3-301(a) of the Health-General Article ("H.G."). Each county has a county health officer, who appoints the staff of the county's health department. H.G. § 3-306(b)(2).

Van Story, a dentist, began her employment with WCHD on December 7, 2007. ECF 1, ¶ 9. During the relevant time period, she served as the "Dental Director/Program Manager." *Id.* ¶ 10.

In November 2012, Van Story filed a complaint against her supervisor, Rod MacRae.[3] *Id.* ¶ 11. Thereafter, Susan Parks replaced MacRae as Van Story's supervisor. *Id.* Van Story alleges that after she filed "her complaint against Mr. [MacRae], WCHD retaliated against her in the form of continued harassment and discrimination" on at least three occasions. *Id.* ¶ 12; *see also id.* ¶¶ 13-17.

---

[2] Given the posture of the case, the Court must assume the truth of Van Story's factual allegations. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[3] The Complaint refers to Mr. MacRae as "Mr. McCray" or "Mr. McRay." ECF 1, ¶¶ 11, 20. I shall utilize the spelling of the surname as it appears in the Motion. *See* ECF 7-1 at 1 n.1.

First, on September 4, 2014, Van Story learned that "even though [she] was the Dental Director, . . . WCHD had previously applied for a dental grant without her knowledge and without her input." *Id.* ¶ 13. Instead, Parks, her supervisor, prepared the application. *Id.* ¶ 14. Second, on September 24, 2014, WCHD "informed Dr. Van Story that an employee complaint had been filed against her and that she was to appear at a hearing for said complaint" later that day. *Id.* ¶ 16. Third, Van Story's "name was omitted from the Department's staff directory while the Department's Medical Director Dr. Mark Jameson was included." *Id.* ¶ 15.

On April 9, 2015, "Van Story was terminated from her position at WCHD." *Id.* ¶ 17. She alleges that she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), based on race (African American), gender (female), and age (65), as well as retaliation, under "Title VII of the Civil Rights Act," the Age Discrimination in Employment Act, and the Americans with Disabilities Act. ECF 1, ¶¶ 5-6, ¶ 5 n.1. However, the Complaint does not specify the date of filing of the charge. *Id.* ¶ 5 (citing EEOC Charge 531-2014-02518).

On or about June 12, 2015, the EEOC "concluded that the evidence 'obtained during the course of the investigation fails to support [Dr. Van Story's] allegations.'" *Id.* ¶ 8 (quoting EEOC) (alteration in original). Van Story did not file this suit until December 4, 2017.[4]

---

[4] Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, a plaintiff must file a charge of discrimination with the EEOC, or a comparable state agency, before filing suit in federal court. 42 U.S.C. § 2000e–5(f)(1); *see Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009); *see also Nnadozie v. Genesis Healthcare Corp.*, 730 Fed. App'x 151, 161 (4th Cir. 2018). The charge must "describe generally the action or actions complained of," in order to provide the charged party with adequate notice. 29 C.F.R. § 1601.12(b); *see Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 670 (4th Cir. 2015) ("We recognize that a primary objective of exhaustion requirements is to put parties on notice of the allegations against them."); *Balas v. Huntington Ingalls Indus.*, Inc., 711 F.3d 401, 407 (4th Cir. 2013). The "exhaustion requirement ensures that the employer is put on notice of the alleged violations so

## II. Standard of Review

### A. 12(b)(1)

As noted, defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting that plaintiff's claims are barred by sovereign immunity. Under Fed. R. Civ. P. 12(b)(1), plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

The Fourth Circuit recently reiterated that the defense of sovereign immunity is a jurisdictional bar, stating that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). But, the defendant "bears the burden of demonstrating" sovereign immunity because it is "akin to an affirmative defense." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

---

that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

Under Title VII, an aggrieved person must file a complaint with the EEOC within 180 days of the alleged discrimination, except in a "deferral" jurisdiction, where the period is 300 days. *See* 42 U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Maryland is a deferral state.

Notably, upon receipt of a right-to-sue letter, an aggrieved individual must file suit within ninety days, as required by 42 U.S.C. § 2000e-5(f)(1). It does not appear that plaintiff did so. This may explain why suit was not filed under Title VII.

## B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must set forth facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.

5

*Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged

in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'"* *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman* ).

### III. Discussion

#### A.

Plaintiff alleges that defendants violated 42 U.S.C. § 1981. Section 1981(a) provides: "All persons within the Jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . . as is enjoyed by white citizens." Section 1981(b) states: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.*

Section 1981 prohibits, *inter alia,* "discrimination in employment on the basis of race." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551-52 (4th Cir. 2006); *see Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975) ("§ 1981 affords a federal remedy against discrimination in private employment on the basis of race."); *Nnadozie v. Genesis Healthcare Corp.*, 730 Fed. App'x 151, 156 (4th Cir. 2018). Section 1981(b) was enacted as part of the Civil Rights Act of 1991 in order to override legislatively the Supreme Court's holding in

7

*Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), and to ensure that § 1981 applied not "only to the formation of a contract" but also to "'conduct by the employer *after the contract relation has been established*, including breach of the terms of the contract or imposition of discriminatory working conditions.'" *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 449 (2008) (emphasis in original) (quoting *Patterson*, 491 U.S. at 177) (discussing post-*Patterson* enactment of § 1981(b)).

The framework for proof of a claim of employment discrimination under § 1981 is the same as the framework applicable to a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc); *see also Love-Lane v. Martin,* 355 F.3d 766, 786 (4th Cir. 2004) (stating, in a case involving an employment discrimination claim under Title VII, § 1981, and § 1983, that "the elements required to establish such a case are the same under all three statutes") (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993)).

To state a prima facie case of retaliation under § 1981, plaintiff must aver that: (1) she engaged in protected activity; (2) the employer took an adverse action against her; and (3) the protected activity and the adverse action were causally connected. *See Boyer-Liberto.*, 786 F.3d at 281.

**B.**

In response to plaintiff's § 1981 claim, each defendant invokes sovereign immunity under the Eleventh Amendment. ECF 7-1 at 4-5. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity,

8

commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State."

The Eleventh Amendment did not create sovereign immunity. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). The predominant purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities[.]" *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

Thus, states generally enjoy immunity from suits brought in federal court by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."). Absent consent or a valid congressional abrogation of sovereign immunity, the Eleventh Amendment bars a private individual from bringing suit against a state in federal court to recover damages, unless there is an exception to sovereign immunity. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Edelman v. Jordan*, 415 U.S. 651 (1974).

Of import here, sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state," including state agencies. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).

The Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002).

Sovereign immunity has not been congressionally abrogated for claims under § 1983, which is the functional equivalent of § 1981 for such purposes. *See Quern v. Jordan*, 440 U.S. 332 (1979); c*f. Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."). In *Quern*, 440 U.S. at 345, the Supreme Court concluded that suits by individuals against a state for money damages under § 1983 are barred by the Eleventh Amendment. *Id.* ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States[.]").

Second, a state may waive its Eleventh Amendment sovereign immunity and permit suit in federal court. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002); *Lee-Thomas*, 666 F.3d at 249. But, the test to determine whether a State has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996). Under *Atascadero*, a court may find that a state has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* (internal quotation marks and alteration omitted); *accord Lee-Thomas*, 666 F.3d at 250-51.

Here, the State has not waived its Eleventh Amendment immunity to a suit of this kind in federal court. *See* ECF 7-1 at 4-5 (defending this suit on the grounds of sovereign immunity).

Finally, *Ex parte Young*, 209 U.S. 123 (1908), provides an exception to the general law, permitting prospective injunctive relief to correct an ongoing violation if the suit is brought against state officials in their official capacities. To avoid an Eleventh Amendment bar to suit under this doctrine, the complaint must be lodged against a state official and it must "alleg[e] an ongoing violation of federal law and see[k] relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

"Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1985)); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (recognizing exception to Eleventh

Amendment immunity for certain suits seeking declaratory and injunctive relief against state officers in their individual capacities); *Bland*, 730 F.3d at 390 ("Because reinstatement is a form of prospective relief, the refusal to provide that relief when it is requested can constitute an ongoing violation of federal law such that the *Ex parte Young* exception applies.").

## C.

As noted, plaintiff asserts a § 1981 claim against DHMH, Governor Hogan, and WCHD. ECF 1. Defendants contend that Van Story's suit is barred by sovereign immunity. ECF 7-1 at 4-5. They also argue that there is no independent cause of action against state actors under § 1981, and they address the contention on the merits. *Id.* at 6-10.

### 1.

DHMH is an entity or arm of the State of Maryland. Under H.G. § 2-101, DHMH is "a principal department of the State government." Therefore, the suit against DHMH is tantamount to a suit against the State of Maryland. Additionally, none of the three exceptions to sovereign immunity applies here.

Accordingly, the § 1981 claim against DHMH is subject to dismissal based on sovereign immunity.

### 2.

To the extent that plaintiff sued Governor Hogan in his official capacity, it is tantamount to a suit against the State. "Under the Eleventh Amendment, 'a State cannot be sued directly in its own name regardless of the relief sought,' absent consent or permissible congressional abrogation. And for purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity." *Ballenger v.* Owens, 352

F.3d 842, 844-45 (4th Cir. 2003) (citations omitted). Therefore, such a suit is barred by sovereign immunity. *Will*, 491 U.S. at 71.

To the extent that Van Story has sued Governor Hogan in his individual capacity, she alleges no facts against him. *See* ECF 1. Accordingly, her claim fails for noncompliance with the notice requirements of Fed. R. Civ. P. 8(a).

Although detailed factual allegations are not required in a complaint, a complaint must have "facial plausibility," which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Instead, the suit must contain sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Dyer v. Md. State Bd. Of Educ.*, 187 F. Supp. 3d 599, 616 (D. Md. 2016), *aff'd*, 685 Fed. App'x 261 (4th Cir. 2017) (per curiam).

The claim is woefully deficient as to Governor Hogan. Therefore, it is subject to dismissal.

**3.**

Defendants contend that the WCHD is "a unit of the State government, and thus, an arm of the State." ECF 7-1 at 5. The defense cites no case in support of this proposition, nor am I aware of any case addressing whether a Maryland county health department enjoys sovereign immunity. Plaintiff did not respond to defendants' argument. *See* ECF 10.

As noted, State agencies enjoy immunity from suit brought in federal court. *See Hans*, 134 U.S. at 3; *see also Garrett*, 531 U.S. at 363; *Bd. of Educ. of Prince George's Cty. v. Town of Riverdale*, 320 Md. 384, 389, 578 A.2d 207, 210 (1990). However, sovereign immunity "does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a 'slice of state power.'" *Ram Ditta v. Md. Nat. Capital Park &*

*Planning Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987) (quoting *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)). But, sovereign immunity does apply when "'the governmental entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Lane v. Anderson*, 660 F. App'x 185, 195-96 (4th Cir. 2016) (quoting *Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)) (internal quotations omitted).

The key question here is whether WCHD is part of a State agency or a local municipality. To determine whether an entity is sufficiently connected to a state, the Fourth Circuit has articulated a nonexclusive list of four factors to be considered: (1) whether the state will pay any judgment against the defendant entity; (2) "'whether the entity exercises a significant degree of autonomy from the state,'" (3) "'whether [the entity] is involved with local versus statewide concerns,'" and (4) "'how [the entity] is treated as a matter of state law.'" *Lane*, 660 F. App'x at 195 (alterations in original) (some alterations omitted) (quoting *Ram Ditta*, 822 F.2d at 457-58).

In support of WCHD's assertion of sovereign immunity, defendants cite only H.G. §§ 3-301 and 3-306 and two Maryland Attorney General opinions. ECF 7-1 at 5 (citing 71 Op. Md. Att'y Gen. 128 (1986) and 83 Op. Md. Att'y Gen. 180 (1998)); *see also* ECF 12 (correcting improper citations in ECF 7-1). Defendants do not analyze the statutes or the opinions. ECF 7-1 at 5. Nor do they discuss whether the intervening decades have affected the facts and law that underlay these opinions. *Id.*

H.G. § 301 creates "a health officer for each county." Section 306 establishes the duties and powers of the county health officers. Their duties include establishing an office in their county, appointing a staff, and serving as "executive officer and secretary of the county board of

14

health." H.G. § 306(c)(1)-(3). Health officers also must enforce, "[u]nder the direction of the Secretary" of the Maryland Department of Health, the state laws and regulations and, "under the direction of the county board of health," the county rules and regulations. *Id.* § 306(c)(4). Additionally, they must "perform any investigation or other duty or function directed by the Secretary or the county board of health and submit appropriate reports to them." *Id.* § 306(c)(5).

The powers of the county health officers include "obtaining samples of food and drugs for analysis," and "authorizing the county health department to retain all collections from specified fees. *Id.* § 306(b), (e). A county health officer may also enter into contracts or written agreements related to delivering health care, "[s]ubject to the consent of the governing body of the county and the written approval of the Secretary." *Id.* § 306(d). The section also permits the Secretary to "delegate duties, powers, and functions . . . to a health officer for a county[.]" *Id.* § 306(f).

These two sections provide some information on the extent to which WCHD "'is involved with local versus statewide concerns'" and "'exercises a significant degree of autonomy from the state.'" *Lane*, 660 F. App'x at 195 (quoting *Ram Ditta*, 822 F.2d at 457-58). But, these sections are an inadequate basis on which to render a decision, even when combined with the two opinions of the Attorney General.

The two Attorney General opinions include specific information and rich analysis. *See* 83 Op. Md. Att'y Gen. 180 (1998); 71 Op. Md. Att'y Gen. 128 (1986). However, these opinions are 20 and 32 years old, respectively.

In his 1986 opinion, the Attorney General concluded that, "for purposes of collection of . . . debts, local health departments are units of the State." 71 Op. Md. Att'y Gen. at 128. However, he warned that "that this conclusion cannot be regarded as determinative of the status

15

of local health departments in other contexts." *Id.* at 128 n.1. The Attorney General also analyzed the State's policy and fiscal control over the county health departments. *Id.* at 131-33.

The Attorney General's analysis is instructive, but he relied on material that may no longer be valid. For example, the Attorney General cited several sections of Chapter 10.04.01 ("Local Health Services Funding") of the Code of Maryland Regulations ("COMAR"). *Id.* at 133. However, since the Attorney General issued his opinion in 1986, this Chapter has been amended several times. *See* COMAR § 10.04.01.9999. Additionally, §§ 10.04.01.01 to 10.04.01.01.09 were repealed and replaced in 2007. *Id.* Most recently, in 2011, the Chapter was revised. *Id.* Yet, WCHD provides no analysis on these changes or any others.

In the second opinion, the Attorney General concluded that "a local health department is a 'unit of the State government' under SFP [State Finance and Procurement] § 7-121" and that the health departments therefore "must include the job classifications and salaries of their State officers and State employees in their disclosure of operating expenses." 83 Op. Md. Att'y Gen. at 180. However, the Attorney General "cautioned that this conclusion is not necessarily determinative of the status of local health departments in other contexts. As a prior opinion observed, 'It is well established that an entity may be considered an agency, unit, or instrumentality of government for one purpose, but not for another.'" *Id.* at 180 (quoting 70 Op. Md. Att'y Gen. 30, 32 (1985)).

The opinion provides specific information and analyses on the funding and staffing of county health departments. *See* 83 Op. Md. Att'y Gen. at 182-84. For example, the Attorney General stated, *id.* at 183 n.3,

> The proportion of State to local matching funds required for each subdivision[,] . . . pursuant to HG § 2-303, may vary considerably, but averages out to a 50/50 ratio of State funds to local matching funds, statewide. In practice, most subdivisions provide supplemental funds, in addition to the match required by

law. Thus, on average, local matching funds required under HG § 2-303, in combination with local supplemental funds currently provide in excess of 50% of the total funds available to LHDs statewide, with State funds making up the remainder.

Information of this kind is useful for determining whether WCHD is a state or local entity. But, I do not know, and defendants do not say, whether county funding practices have changed since this opinion was written 20 years ago. At this juncture, I cannot rely on such figures to determine the extent to which the State will pay a judgment against WCHD.

The Attorney General also analyzed the autonomy of county health departments by considering the state's "Health Policy Control," "Administrative Control," and "Fiscal Control" over them. *Id.* at 186-90. Again, the opinion provides useful analysis, but it relies on material that may no longer be valid. For example, as in the 1986 opinion, the Attorney General cited Chapter 10.04.01 several times. *Id.* at 184, 190.

As noted, WCHD does not address the effects of the intervening decades on the reasoning of these opinions. Although WCHD may be entitled to sovereign immunity, in the posture of the case, I decline to make that determination based on dated opinions of the Attorney General, unaccompanied by any analysis. "'It is not the job of this Court to provide the legal research necessary to support the . . . [party's] arguments if the . . . [party is] unwilling to do so'" itself. *Brooks v. Field*, No. 6:14-cv-2267-BHH, 2016 WL 1165409, at *7 (D.S.C. Mar. 25, 2016) (quoting *Bell v. Fairmont Raffles Hotel Int'l*, No. 12-cv-757, 2013 WL 1291005, at *2 (W.D. Pa. Mar. 27, 2013)).

I conclude that, at this juncture, WCHD fails to "bear[] the burden of demonstrating" that sovereign immunity applies as to WCHD. *See Hutto*, 773 F.3d at 543.

**4.**

Defendants contend that there is no cause of action against State actors, such as WCHD, under § 1981. Rather, they assert that "section 1983 'constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" ECF 7-1 at 5 (quoting *Jett*, *supra*, 491 U.S. at 733); *see also Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 n. 1 (4th Cir. 1995) (holding that "this aspect of *Jett*" was unaffected "by the Civil Rights Act of 1991" and therefore remains good law).

Van Story concedes this point.[5] She states that her "Section 1981 Claims are Limited to the State via 42 USC 1983." ECF 10 at 3. And, she acknowledges that she "would need to file her Section 1981 claim via 42 USC Section 1983, and exclusively via that provision against the State Agency." *Id.* As a result, she "urge[s] that the court allow Plaintiff appropriate leave in which to properly assert that provision [§ 1983], and to make any other necessary factual assertions." *Id.*

Accordingly, I shall dismiss the § 1981 claim against WCHD, with leave to amend.

### III. CONCLUSION

For the aforementioned reasons, defendants' Motion is granted, with leave to amend as to WCHD. A separate Order follows.

Date: November 7, 2018                                /s/
                                                    Ellen L. Hollander
                                                    United States District Judge

---

[5] Although defendants argued that no cause of action is available under § 1981 against State actors in general, they raised this argument only in support of dismissing Governor Hogan. Nevertheless, I shall construe their argument to apply to WCHD as well, in light of plaintiff's broad concession and request to amend. ECF 10 at 3.