**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

PATRICIA VAN STORY       *
     *Plaintiff*      *
      *
v.      *
      *
WASHINGTON COUNTY HEALTH DEPT,       *
MARYLAND DEPT OF HEALTH &       *
  MENTAL HYGIENE,       *       Civil No. ELH-17-3590
and       *
LARRY HOGAN, GOVERNOR       *
     *Defendants*.      *

********

**MEMORANDUM OPINION**

In this employment discrimination case, plaintiff Patricia Van Story, D.D.S. sued her former employer, the Washington County Health Department ("WCHD"), as well as the Maryland Department of Health & Mental Hygiene (the "MDH" or the "Department"),[1] and Maryland Governor Larry Hogan. ECF 1. In an Amended Complaint (ECF 15), plaintiff asserts a single count of retaliation, "pursuant to 42 U.S.C. Section 1981 via 42 U.S.C. Section 1983." *Id.* at 1.[2]

According to the caption of the Amended Complaint, plaintiff sued WCHD, MDH, and the Governor. Although the text of the suit identifies MDH and WCHD as defendants, the retaliation claim appears to be directed only at WCHD. And, the suit contains no allegations as to Governor Hogan.

-------------------

[1] In July 2017, the name of the Maryland Department of Health & Mental Hygiene was changed to the Maryland Department of Health. *See* Md. Code (2015, 2017 Supp.), §§ 1-101, 2-101 of the Health-General Article. Suit was filed on December 4, 2017. Nevertheless, plaintiff continues to refer to the agency by its former name. *See, e.g.*, ECF 15.

[2] By Memorandum (ECF 13) and Order (ECF 14) of November 7, 2018, the Court granted defendants' motion to dismiss, with prejudice, as to MDH and Governor Hogan, and with leave to amend as to WCHD. The Amended Complaint followed.

WCHD and Governor Hogan have moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ECF 18; ECF 18-1. It is supported by a memorandum of law (ECF 18-1) (collectively, the "Motion to Dismiss") and an exhibit. ECF 18-2. Curiously, MDH did not join in the Motion. Van Story opposes the Motion to Dismiss (ECF 24), and WCHD and Governor Hogan have replied. ECF 26.

On January 18, 2019, Van Story filed a "Motion for Leave to File a Second Amended Complaint." ECF 21 (the "Motion for Leave"). It is supported by five exhibits. *See* ECF 21-2 to ECF 21-6. In the Motion for Leave, plaintiff expressly withdraws all claims against defendants Hogan and MDH (identified in the Motion for Leave as the "State"). ECF 21 at 1.[3] In light of plaintiff's withdrawal of all claims against Hogan and MDH, WCHD is the only remaining defendant. However, in the Motion for Leave plaintiff seeks to add two defendants: her former supervisors, Rod MacRae[4] and Susan Parks, in their individual and official capacities. *See* ECF 21-1 at 1, 2, ¶¶ 4-5. WCHD, Hogan, and MDH oppose the Motion for Leave. *See* ECF 25. Plaintiff did not reply, and the time to do so has expired. *See* Local Rule 105.2.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons set forth below, I shall deny the Motion for Leave and grant the Motion to Dismiss.

---

[3] This is consistent with the Court's ruling of November 7, 2018, dismissing the suit as to MDH and Governor Hogan.

[4] The Complaint refers to Van Story's former supervisor as "Mr. MacRae," "Mr. McCray," and "Mr. McRay." ECF 1, ¶¶ 11, 20. The proposed Second Amended Complaint refers to him as "Robert McCrae," but continues to use a variety of spelling variations. *See, e.g.*, ECF 21-1, ¶ 4. I shall utilize the name "Rod MacRae," which appears in defendants' first motion to dismiss. *See* ECF 7-1 at 1 n. 1.

# I.     Factual and Procedural Background[5]

Plaintiff alleges that WCHD "is an agency of and is governed by" the Department. ECF 15, ¶ 3.  Further, she alleges that the Department "is the managing agency of the State of Maryland's health care delivery system . . . ."  *Id.* ¶ 4.

Van Story, a licensed African American dentist, was employed by WCHD from December 7, 2007 to April 2016.  ECF 15, ¶¶ 2, 6 n.1.  During the relevant time period, she served as the "Dental Director/Program Manager."  *Id.* ¶ 5.

WCHD is one of twenty-four statutorily created county health departments in Maryland. Md. Code (2015 Repl. Vol., 2017 Supp.), § 3-301(a) of the Health-General Article ("H.G.").[6]  Each county has a county health officer, who appoints the staff of the county's health department. H.G. § 3-306(b)(2).

In November 2012, Van Story filed a complaint against her supervisor, Rod MacRae, who was the Director of Health Services.  *Id.* ¶ 9.  Thereafter, Susan Parks replaced MacRae as Van Story's supervisor.  *Id.*  Van Story alleges that after she filed "her complaint against Mr. [MacRae], WCHD retaliated against her by any of [sic] continued harassment and discrimination."  *Id.* ¶ 10. On March 31, 2014, Parks reportedly "disciplined" Van Story.  *Id.*  Van Story appealed the discipline.  *Id.*

---

[5] Given the posture of the case, the Court must assume the truth of Van Story's factual allegations.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[6] In this Memorandum Opinion, all references to "county" and "Health officer" include Baltimore City and the Baltimore City Commissioner of Health, respectively.  *See* H.G. § 1-101(b), (e).  Nevertheless, the Court's discussion of county health departments does not uniformly apply to every county or to Baltimore City.  *See, e.g.*, H.G. § 3-306(c)(2) ("Except in Montgomery County, the health officer for a county shall appoint the staff of the county health department.").

Van Story complains that her "name and title were omitted from the Department's staff directory while the Department's Medical Director, her white counterpart, Dr. Mark Jameson was included." *Id.* ¶ 12. On September 4, 2014, Van Story learned that "[e]ven though [she] was the Dental Director, . . . WCHD had previously applied for a dental grant without her knowledge or input." *Id.* ¶ 11. Instead, Parks, her supervisor, prepared the application with a local entity. *Id.* Van Story complained about the grant. *Id.* ¶ 13.

On October 16, 2014, WCHD "informed [Van Story] that an employee complaint had been filed against her, and that she was required to appear at a hearing regarding that complaint" later that same day. *Id.* The following day, plaintiff filed a charge of discrimination with both the Maryland Commission on Civil Rights and the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 14; *see* ECF 21-3; ECF 21-5.

Almost six months later, on April 9, 2015, "Van Story was terminated from her position at WCHD." ECF 15, ¶ 16. The EEOC concluded its investigation on June 12, 2015. *Id.* ¶ 17; *see also* ECF 1, ¶ 17. However, plaintiff did not file suit until December 2017.[7]

---

[7] Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, a plaintiff must file a charge of discrimination with the EEOC, or a comparable state agency, before filing suit in federal court. 42 U.S.C. § 2000e–5(f)(1); *see Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009); *see also Nnadozie v. Genesis Healthcare Corp.*, 730 Fed. App'x 151, 161 (4th Cir. 2018). An aggrieved person must file a complaint with the EEOC within 180 days of the alleged discrimination, except in a "deferral" jurisdiction, where the period is 300 days. *See* 42 U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Maryland is a deferral state.

Upon receipt of a right-to-sue letter from the EEOC, an aggrieved individual must file suit within ninety days. 42 U.S.C. § 2000e-5(f)(1). Plaintiff failed to do so. This may explain why suit was not filed under Title VII.

### II.    Motion to Dismiss

### A.    Standards of Review

### 1.    Rule 12(b)(1)

As noted, defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting that plaintiff's claims are barred by sovereign immunity. Under Fed. R. Civ. P. 12(b)(1), plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. On the other hand, in a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id*. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009); *Evans*, 166 F.3d at 647.

Defendants raise a facial challenge to the Court's subject matter jurisdiction. As indicated, this challenge is based on the four corners of the Amended Complaint.

The Fourth Circuit recently reiterated that the defense of sovereign immunity is a jurisdictional bar, stating that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). But, a defendant "bears the burden of demonstrating" sovereign immunity, because it is "akin to an affirmative defense." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

### 2.      Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts

sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, ___, 135 S. Ct. 346, 346 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017);

*Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'" Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman* ).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*,

780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 08 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). And, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, without converting a motion to dismiss into a motion for summary judgment, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). This includes "docket entries, pleadings and papers in other cases . . . ." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n. 3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. Appx. 200 (4th Cir. May 6, 2016); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (concluding that a district court may "properly take judicial notice of its own records"). However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013) (*abrogated on other grounds* by *Reed v.*

*Town of Gilbert, Ariz.*, 576 U.S. ____, 135 S. Ct. 2218 (2015), as recognized in *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015)). But, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Defendants submitted the affidavit of Beth Reid, Deputy Director of the Office of Human Resources for the MDH. ECF 18-2. I need not consider this exhibit to resolve the Motion.

### B.      Discussion

### 1.      42 U.S.C. §§ 1981, 1983

Pursuant to 42 U.S.C. § 1983, plaintiff alleges a violation of rights guaranteed in 42 U.S.C. § 1981. Section 1983 establishes a cause of action against any "person" who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. It "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Here, plaintiff invokes § 1983 as a vehicle for the contention that defendants discriminated against her on the basis of race, in violation of 42 U.S.C. § 1981. Section 1981 prohibits, *inter alia,* "discrimination in employment on the basis of race." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551-52 (4th Cir. 2006); *see Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975) ("§ 1981 affords a federal remedy against discrimination in private employment on the basis of race."); *Nnadozie v. Genesis Healthcare Corp.*, 730 Fed. App'x 151, 156 (4th Cir. 2018).

Section 1981(a) provides, in part: "All persons within the Jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws . . . as is enjoyed by white citizens." Section 1981(b) states: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* Section 1981(b), enacted as part of the Civil Rights Act of 1991, ensures that § 1981 applies not "only to the formation of a contract" but also to "'conduct by the employer *after the contract relation has been established*, including breach of the terms of the contract or imposition of discriminatory working conditions.'" *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 449 (2008) (emphasis in original) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 177 (1989)) (discussing post-*Patterson* enactment of § 1981(b)).

The framework for proof of a claim of retaliation under § 1981 is the same as the framework applicable to a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 n. 1 (4th Cir. 2000). To state a claim for retaliation, plaintiff must aver that: (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) the protected activity and the adverse action were causally connected. *See Guessous*, 828 F.3d at 217; *Boyer-Liberto*, 786 F.3d at 281.

## 2. Sovereign Immunity

WCHD contends that it is protected from plaintiff's suit in federal court based on sovereign immunity under the Eleventh Amendment. ECF 18-1 at 5-8. The Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State."

Under the Eleventh Amendment, states generally enjoy immunity from suits brought in federal court by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."). Therefore, absent consent or a valid congressional abrogation of sovereign immunity, the Eleventh Amendment bars a private individual from bringing suit against a state in federal court to recover damages, unless there is an exception to sovereign immunity. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Edelman v. Jordan*, 415 U.S. 651 (1974).

The Eleventh Amendment did not create sovereign immunity, however. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). State sovereign immunity "accord[s] states the dignity that is consistent with their status as sovereign entities[.]" *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

Of import here, sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state," including state agencies. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Pense v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019) *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005). The question here, addressed *infra*, is whether WCHD is an arm of the State.

The Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002).

Sovereign immunity has not been congressionally abrogated for claims under § 1983. *See Quern v. Jordan*, 440 U.S. 332 (1979). In *Quern*, 440 U.S. at 345, the Supreme Court concluded that suits by individuals against a state for money damages under § 1983 are barred by the Eleventh Amendment. *Id.* ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States[.]").

Notably, a state may waive its Eleventh Amendment sovereign immunity and permit suit in federal court. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002); *see Pense*, 926 F.3d at 101; *Lee-Thomas*, 666 F.3d at 249. But, the test to determine whether a state has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996); *see Pense*, 939 F.3d at 101.

Under *Atascadero*, 473 U.S. at 254, a court may find that a state has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." (Internal quotation marks and alteration omitted); *accord Pense*, 926 F.3d at 101; *Lee-Thomas*, 666 F.3d at 250-51. The State of Maryland has not waived its Eleventh Amendment immunity to a suit of this kind in federal court. *See* ECF 18-1 at 5-8 (defending this suit on the grounds of sovereign immunity).

Under *Ex parte Young*, 209 U.S. 123 (1908), sovereign immunity does not extend to a request for prospective injunctive relief to correct an ongoing violation of law. However, to avoid an Eleventh Amendment bar to suit on this basis, the complaint must be lodged against a state official, and it must "alleg[e] an ongoing violation of federal law and see[k] relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

"Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14 (1985)); *see also Idaho v. Coeur*

*d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997) (recognizing exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against state officers in their individual capacities); *Bland*, 730 F.3d at 390 ("Because reinstatement is a form of prospective relief, the refusal to provide that relief when it is requested can constitute an ongoing violation of federal law such that the *Ex parte Young* exception applies.").

Plaintiff does not seek reinstatement. *See* ECF 21-1 at 8. Instead, her Complaint includes boilerplate language, requesting the Court to "award equitable and declaratory relief, including whatever other remedies this court deems just and necessary[.]" ECF 21-1 at 8. Regardless, plaintiff fails to state a viable claim for equitable relief, for many of the reasons articulated in the Court's analysis of plaintiff's Motion for Leave, discussed *infra*.

The question remains whether WCHD is an arm of the State for purposes of sovereign immunity. I turn to that issue.

### 3.    WCHD

Defendants contend that the WCHD is "a unit of the State government, and thus, an arm of the State." ECF 18-1 at 5-8. Therefore, they argue that the suit against WCHD is barred by sovereign immunity. Conversely, plaintiff contends that WCHD is merely a local agency. *See* ECF 21 at 2-4.

As noted, State agencies enjoy immunity from suit brought in federal court. *See Hans*, 134 U.S. at 3; *see also Garrett*, 531 U.S. at 363; *Bd. of Educ. of Prince George's Cty. v. Town of Riverdale*, 320 Md. 384, 389, 578 A.2d 207, 210 (1990). However, sovereign immunity "does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a 'slice of state power.'" *Ram Ditta v. Md. Nat. Capital Park & Planning Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987) (quoting *Lake Country Estates, Inc. v. Tahoe Regional*

*Planning Agency*, 440 U.S. 391, 401 (1979)). But, sovereign immunity applies when "'the governmental entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Lane v. Anderson*, 660 F. App'x 185, 195-96 (4th Cir. 2016) (quoting *Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)) (internal quotations omitted).

As noted, the issue here is whether WCHD is a State agency or a local one. To determine whether an entity is sufficiently connected to a state for purposes of immunity, the Fourth Circuit has articulated a nonexclusive list of four factors to be considered: (1) whether the state will pay any judgment against the defendant entity; (2) "'whether the entity exercises a significant degree of autonomy from the state,'" (3) "'whether [the entity] is involved with local versus statewide concerns,'" and (4) "'how [the entity] is treated as a matter of state law.'" *Lane*, 660 F. App'x at 195 (alterations in original) (some alterations omitted) (quoting *Ram Ditta*, 822 F.2d at 457-58).

### a. Payment of a Judgment

In *Gray v. Laws*, 51 F.3d 426 (4th Cir. 1995) an employee of a county health department in North Carolina who was terminated brought suit against her employer under § 1983, alleging due process and First Amendment claims. After a lengthy discussion of *Hess v. Port-Authority Trans Hudson Corp.*, 513 U.S. 30 (1994), the *Gray* Court stated, 51 F.3d at 431-32:

> In *Hess*, the Court identified as the primary "concerns . . . that underpin the Eleventh Amendment," that federal court judgments not deplete state treasuries and that the sovereign "dignity" of the states be preserved. Hess, 513 U.S. at 51-52. The primacy of these concerns, explained the Court, is due to the historical facts that "[a]doption of the Amendment responded most immediately to the States' fears that 'federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin,'" *id.* at 39 (citation omitted), and that " '[t]he Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity,'" *id.* (citation omitted). These two concerns, "the Eleventh Amendment's twin reasons for being," *id.* at 47, the Court

instructed, should dominate the inquiry in cases where it is difficult to discern whether a particular entity is an arm of the state, *id.* ("When indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being remain our prime guide.").

The *Gray* Court concluded that "it appears that a determination that the state treasury will be liable for a particular judgment is largely, if not wholly, dispositive of Eleventh Amendment immunity in the single state context." *Id.* at 433. The Court remanded the case to the district court with instructions to conduct the proper Eleventh Amendment analysis. *See also Ram Ditta*, 822 F.2d 456.

*Bockes v. Fields*, 999 F.2d at 789 (4th Cir. 1993), also provides guidance. There, a terminated employee filed suit against the Board of Social Services for Grayson County, Virginia and the Department of Social Services for Grayson County, alleging claims under § 1983. The Court concluded that because eighty percent of the liability of the defendants was covered by an insurance plan funded by the State, the two defendants were entitled to Eleventh Amendment immunity. *Id.* at 790-91.

This Court is not aware of any provision of Maryland law that directly states that judgments against county health departments will be paid by the State. However, the State represents to the Court that it would pay any judgment against WCHD. ECF 26 at 3. The Court credits this representation.

### b. WCHD's Degree of Autonomy

State law and regulations severely constrain the autonomy of county health departments, including WCHD, by tightly regulating the structure, operations, and funding.

State law creates "a health officer for each county." H.G. § 3-301. State law provides minimum qualifications for the position of health officer. *See id.* § 3-302(d). And, by rule or regulation, the MDH may require other qualifications and training. *Id.* § 3-302(d)(2).

Each health officer is a special appointment in the State Personnel Management System. H.G. § 3-304; *see also* Md. Code (2015 Repl. Vol., 2017 Supp.), § 6-102 of the State Personnel & Pensions Article. The health officer receives the salary approved in the State budget and is reimbursed for expenses as provided by State regulations. H.G. § 3-304(a)(1)-(2). However, a county may supplement the health officer's salary. *Id.* § 3-304(a)(3).

State law also establishes the duties and powers of the health officers. These duties include establishing an office in each county, appointing a staff, and serving as "executive officer and secretary of the county board of health." H.G. § 3-306(c)(1)-(3). Health officers must also enforce, "[u]nder the direction of the Secretary" of the MDH, the State laws and regulations and, "under the direction of the county board of health," the county rules and regulations. *Id.* § 3-306(c)(4). Additionally, they must "perform any investigation or other duty or function directed by the Secretary or the county board of health and submit appropriate reports to them." *Id.* § 3-306(c)(5). A county health officer may enter into contracts or written agreements related to delivering health care, "[s]ubject to the consent of the governing body of the county and the written approval of the Secretary." *Id.* § 3-306(d). The Secretary also may "delegate duties, powers, and functions . . . to a health officer for a county[.]" *Id.* § 3-306(f).

The governing body of each county recommends a prospective health officer to the Secretary of MDH. H.G. § 3-302(a). But, the Secretary has the actual authority to appoint the health officer. *Id.* § 3-302(c)(1). The health officer serves at the pleasure of the county governing body and the Secretary, and may be removed with the concurrence of both. *Id.* § 3-302(f)-(g). As a result, a county can only remove the health officer if the Secretary approves.

The State also regulates the operations of the county health departments and employs their staff. Each county health department must use the State's procurement process, unless it has

obtained the authorization to use the county's process. *Id.* § 10.04.01.06(B). The State also regulates the reimbursement of expenses; the eligibility of employee fringe benefits for State matching funds; the accounting and reporting of local health department revenues and interest; and insurance, reimbursement for injuries and audits, and prohibited expenditures. *Id.* § 10.04.01.06(C)-(J). Additionally, county health department staff, including WCHD staff, are State employees appointed by the health officer. *See* Md. Code (2014 Repl. Vol., 2018 Supp.), § 12-401(6) of the State Government Article ("S.G.") ("[I]n this subtitle "State Personnel" means . . . (6) except in Montgomery County, an employee of a county health department.").

In addition, the State controls much of the funding and budgeting process for the county health departments, thereby limiting their autonomy. *See* Code of Maryland Regulations ("COMAR") §§ 10.04.01 to 10.04.06. Under H.G. § 2-302(b), statewide funding levels are specified for each fiscal year between 2011 and 2019, along with funding levels of varying amounts for each county. For example, Washington County received $ 1,381,306 for fiscal years 2011 and 2012. *Id.* § 2-302(b)(1)(xxii). For fiscal year 2018, statewide funding for county health departments totaled $49,488,474, with each county receiving the same amount that it received in fiscal year 2017. *Id.* § 2-302(b)(4). As to fiscal year 2019, the funding levels are based on the funding of the preceding fiscal year, adjusted for inflation and population growth. *Id.* § 2-203(b)(5). The statute also sets a permanent floor on funding levels for each county. *Id.* § 2-203(c).

As a condition of receipt of State funding for a county health department, each county must provide a local funding match. *See* H.G. § 2-303; *see also* COMAR 10.04.01.04(B). However, the MDH cannot require a county to provide a greater proportion of the funds than the county provided for fiscal year 1996. *Id.* § 2-303.

Each county health department must submit its budget to the MDH, which in turn determines whether the budget is acceptable. COMAR § 10.04.01.05(A). The State also specifies the format, content, and submission date for the budgets. *Id.* § 10.04.01.05(B). Any substantive changes in local health projects during the fiscal year are subject to the Department's review and approval. COMAR § 10.04.01.05(G).

In addition, the State controls how local health departments may spend their funds. Pursuant to H.G. § 2-304, all local health departments must use the State appropriations for the following services: communicable disease control; environmental health; family planning; maternal and child health; wellness promotion; adult health and geriatric services, and administrative and communication services associated with the specified health services. Furthermore, these funds may only be spent if the activity to be funded is "(1) The responsibility of the local health officer, the [MDH] Secretary, or the Secretary of the Environment"; (2) "Delegated to the local health officer by the [MDH] Secretary or the Secretary of the Environment; and" (3) "not budgeted for separately in the State budget." *Id.* § 10.04.01.06(A). There is also a long list of specific expenditures for which State funds may not be used, including "Hospitalization of clients[,]" "Salary supplements[,]" and "other items the Secretary may specify." *Id.* § 10.04.01.06(G)(1)(a), (b), (g).

### c. Local Versus Statewide Concerns

At first blush, it might seem that a county health department would be more involved with local concerns than statewide concerns. And, it is undoubtedly true that WCHD is concerned with health matters in Washington County. However, the State has set the agenda for the concerns of local health departments across the State.

As noted, the county health departments, including WCHD, may only provide services in regard to seven areas specified by State law. *See* H.G. § 2-304. It is the Secretary who sets the policies and develops the plans for all units within the MDH's jurisdiction. S.G. § 8-205(b). Accordingly, although WCHD serves local concerns, it also serves statewide policies and priorities set by MDH.

### d.    Treatment of County Health Departments Under State Law

The State treats WCHD and the other county health departments as units of the State for several purposes. Most significantly, the State treats them as units of the State for the purpose of litigation. Under S.G. § 6-106(a), the Maryland Attorney General (hereinafter, the "A.G." or "Attorney General") is limited to working on the "legal business" of the State. And, pursuant to S.G. § 6-106(b), the Attorney General "shall represent and otherwise perform all of the legal work for each officer and unit of the State government." The Court is not aware of any provision of State law that requires or permits the Attorney General to represent a county agency in federal court. Notably, consistent with WCHD's position that it is an arm of the State, the A.G. represents WCHD in this litigation.

Furthermore, as noted in the Court's Memorandum Opinion of November 7, 2018 (ECF 13), two prior opinions of the Attorney General concluded that county health departments should be treated as units of the State. ECF 13 at 14-17. In 71 Op. Md. Att'y Gen. 128, 128 (1986), the A.G. concluded that, "for purposes of collection of . . . debts, local health departments are units of the State." Twelve years later, in 83 Op. Md. Att'y Gen. 180, 180 (1998), the A.G. concluded that "a local health department is a 'unit of the State government' under SPF [State

Finance and Procurement] § 7-121 and that the health departments therefore "must include the job classifications of their State officer and employees in their disclosure of operating expenditures."[8]

The State also regards county health departments as State entities for the purpose of records management. Pursuant to the MDH's Records Management Policy ("RMP"), "the Health Officer at each Local Health Department (LHD) shall each appoint a Records Coordinator for their respective location." *See* MDH Policy § 01.05.06(III)(D)(4).[9] The RMP cites as the basis for the policy the fact that "MDH is a State agency, and as such, all of the record materials of the MDH, its programs, facilities, boards, commissions, and local health departments are public records (or 'records of public officials') which makes them subject to State rules on Maryland's public records." *Id.* § 01.05.06(III)(A)(2).

Finally, as noted, county health department employees are regarded as State personnel. S.G. § 12-401(6).

### e.     Conclusion

For these reasons, I readily conclude that WCHD is an arm of the State. Moreover, the exceptions to sovereign immunity, discussed earlier, do not apply. WCHD is entitled to sovereign immunity, pursuant to the Eleventh Amendment of the United States Constitution.

### III.     Motion for Leave

Plaintiff moves for leave to file a Second Amended Complaint against WCHD and two of her former supervisors, Rod MacRae and Susan Parks. ECF 21. Defendants oppose the Motion,

---

[8] The opinions were rooted in facts that may have changed in the intervening decades.

[9] *See* https://health.maryland.gov/Pages/mdhpolices.aspx.

claiming that the suit is both time-barred and futile. ECF 25.[10]

## A. Rule 15(a)(2)

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. Rule 5(a)(1)(A) does not apply here.[11]  Rule 15(a)(2) states: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  *See also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).

Under Rule 15(a), the district court has "broad discretion concerning motions to amend pleadings."  *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam); *see also Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc).  There are three circumstances when it is appropriate to deny leave to amend: "(1) 'the amendment would be prejudicial to the opposing party;' (2) 'There has been bad faith on the part of the moving party;' or (3) 'The amendment would have been futile.'"  *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013) (quoting *Laber*, 438 F.3d at 426).

Under Rule 15(a)(2), "prejudice means that the party opposing the amendment would be hindered in the preparation of its case, or would have been prevented from taking some measure in support of its position."  61A AM. JUR. 2d, Pleading § 723.  Courts may find undue prejudice sufficient to justify denying leave to amend if a new claim or defense would force the non-moving

---

[10] Even though WCHD is the only defendant remaining in the suit, I will continue to refer to "defendants" because defendants jointly opposed the Motion for Leave.

[11] Rule 15(a)(1)(A) states that "[a] party may amend its pleading once as a matter of course," if done within 21 days after serving the pleading. Or, "if the pleading is one to which a responsive pleading is required," a party may amend once as a matter of course, provided that it does so within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(B).

party to "expend significant additional resources to conduct discovery and prepare for trial," would "significantly delay the resolution of the dispute," or would "prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.*; *see also Sharkey IRO/IRA v. Franklin Res.*, 263 F.R.D. 298, 301 (D. Md. 2009) (stating that amendment "may prejudice the non-moving party when the motion would shift the theory of the case, thereby rendering the non-moving party's prior discovery a misdirected use of resources and compelling the non-moving party to engage in costly additional discovery"). But, "[a]n amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427 (citing *Davis v. Piper Aircraft Co.*, 615 F.2d 606, 613 (4th Cir. 1980), *cert. denied*, 448 U.S. 911 (1980)).

A district court may also deny a motion to amend for reasons "'such as undue delay . . . [or] repeated failure to cure deficiencies by amendments previously allowed. . . .'" *Booth*, 337 F. App'x at 312 (quoting *Foman*, 371 U.S. at 182). However, "[d]elay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). "Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Id.* (citation omitted); *see Simmons*, 634 F.3d at 769; *Equal Rights Center v. Niles Bolton Assocs.,* 602 F.3d 597, 603 (4th Cir. 2010).

An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). However, the review for futility "is not equivalent to an evaluation of the underlying merits of the case. To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" *Next Generation Grp., LLC v. Sylvan Learning Ctrs.,*

*LLC*, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (quoting *Davis.*, 615 F.2d at 613).

### B.    Discussion

### 1.  Statute of Limitations

Defendant maintains that the Second Amended Complaint is futile as its claims are subject to a two-year statute of limitations and are therefore time-barred.  ECF 25 at 9-11.  Plaintiff did not file a reply; she has not responded to defendants' argument. *See* Docket.

Under certain circumstances, a court must treat an amended complaint as if it were filed on the date of the initial complaint.  This convention is known as "relation back."  *See* Fed. R. Civ. P. 15(c).  If the amendment relates back, it should be allowed under Fed. R. Civ. P. 15(a).  If it does not, the claims against the new defendants are barred, as untimely.

Under Rule 15(c)(1)(C), an amendment that "changes the party or the naming of the party" to a suit relates back "to the date of the original pleading," if:

> Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

In other words, for an amended suit to relate back, three requirements must be met.  First, Rule 15(c)(1)(B) must be satisfied.  *See* Fed. R. Civ. P. 15(c)(1)(C).  Rule 15(c)(1)(B) requires that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."  Second, the defendant must have received notice of the action within the period provided by Rule 4(m), such that it will not be prejudiced in defending itself on the merits.  *See* Fed. R. Civ. P. 15(c)(1)(C)(i).  Rule 4(m) provides for service on a defendant within 90 days after the complaint was filed.  Third, it is required that the defendant "knew or

should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C)(ii).

In *Krupski v. Costa Crociere, S.p.A.*, 560 U.S. 538 (2010), the plaintiff was injured on a cruise ship. Her ticket was issued by Costa Cruise Lines ("Costa"), the original defendant, but the ticket identified Costa Crociere S.p.A. ("Crociere") as the carrier, and required notice to the carrier. Suit was timely filed against Costa. After limitations expired, the plaintiff was granted leave to amend to add Crociere as a defendant. But, the district court and the Eleventh Circuit concluded that, under Fed. R. Civ. P. 15(c), the amendment did not relate back to the date of the timely filed complaint under Rule 15(c). The Supreme Court reversed.

The Supreme Court made clear that any focus on the plaintiff's knowledge as to the proper defendant was "the wrong starting point." 560 U.S. at 548. It said, *id.*: "The question under Rule 15(c)(1)(C)(ii) is not whether Krupski knew or should have known the identity of Costa Crociere . . . but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error." The Court added, *id.*: "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint.[]" (Emphasis in original). Moreover, the Court observed that "it would be error to conflate knowledge of a party's existence with the absence of mistake." *Id.*

In addition, the Court reasoned that Rule 15(c)(1)(C)(ii) is not met when "the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity." *Id.* at 552. Notably, "the amending party's diligence" is not a factor. *Id.* at 553.

In *Krupski*, the two defendant entities were clearly related. And, the Court observed that the complaint "made clear" that the plaintiff "meant to sue the company that 'owned, operated, managed . . . and controlled' the ship . . . .", *i.e.*, Crociere, not Costa. *Id.* at 554 (citation omitted). Thus, the failure to name the proper party was a mistake. *Id.* at 556. In reaching its decision, the Court pointed to the "interrelationship" between the two defendants and the similarity of their names, which "heighten[ed] the expectation that Costa Crociere should suspect a mistake [was] made when Costa Cruise is named in a complaint that actually describes Costa Crociere's activities." *Id.*

This case is different. Van Story seeks to add as defendants two individuals who were clearly known to her when she filed her original Complaint in December 2017 and her Amended Complaint in November 2018. For example, when plaintiff filed this suit in December 2017, she referred to both proposed defendants by name and identified them as her former supervisors. She said, ECF 1, ¶ 11: "On or about November 2012, Dr. Van Story filed a complaint against Rod McCray [sic], her former supervisor and Director of Health Services. As a result, Mr. McCray [sic] was removed as Dr. Van Story's supervisor. Susan Parks replaced Mr. McCray [sic] as Dr. Van Story's supervisor."

Simply put, Van Story failed to bring suit against MacRae and Parks in December 2017, when she initiated the litigation, and in November 2018, when she filed her Amended Complaint. *See* ECF 15. There was no "mistake concerning the proper party's identity," however, as required by Rule 15(c)(1)(C)(ii), and the suit fails the three-prong test for relation back under Rule 15(c)(1)(C).

Because the Second Amended Complaint would not relate back to the original Complaint or the Amended Complaint, the Court must determine whether the claims in the Second Amended

Complaint are time-barred by the statute of limitations. Plaintiff seeks to bring her § 1981 claims "via" § 1983, against WCHD, MacRae, and Parks for retaliation and against Parks for discrimination. ECF 21-1 at 5-7. In opposing the Motion to Leave, defendants urge the Court to analogize Van Story's employment discrimination claims to the Maryland Fair Employment Practices Act ("FEPA"), S.G. § 20-606. *See* ECF 25 at 9-10 (citing *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655 (4th Cir. 2018)). That is, they maintain that the Court should apply FEPA's two-year limitations period to plaintiff's suit.

Section 1983 does not contain a statute of limitations. Thus, to determine whether a § 1983 claim was timely filed, courts typically look to the statute of limitations with respect to the most analogous state-law cause of action. *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 388 (4th Cir. 2014); *see also* 42 U.S.C. § 1988(a) ("[I]n all cases where [the laws of the United States] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies . . . , the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause[.]").

A suit filed pursuant to 42 U.S.C. § 1983 constitutes a personal injury action. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). Therefore, Maryland law typically affords a three-year limitations period. *See* Md. Code (2013 Repl. Vol., 2017 Supp.), § 5-101 of the Courts and Judicial Proceedings Article ("C.J."); *Owens*, 767 F.3d at 388.

However, in this case, the § 1983 claims arise from alleged violations of plaintiff's rights under § 1981. Congress amended § 1981 in the Civil Rights Act of 1991 ("1991 Act"), 105 Stat. 1071, 1071-72, § 101, Pub. L. No. 102-166. The 1991 Act clarified that § 1981 applied not only

29

to discrimination in contract formation, but also to the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). This is significant because 28 U.S.C. § 1658 provides a "catch-all four year statute of limitations for causes of action that arose under an Act of Congress enacted after December 1, 1990." *Dutton v. Montgomery Cty.*, DKC 2008-3504, 2009 WL 2496844, at *3 (D. Md. Aug. 11, 2009), *aff'd* 368 F. App'x 362 (4th Cir. 2010). Section 1658(a) states: "Except as otherwise provided by law, a civil action *arising under* an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." (emphasis added).

In *Jones v. R.R. Donnelley & Sons*, 541 U.S. 369, 371-72 (2004), the Supreme Court ruled that § 1658's four-year statute of limitations was applicable to Fourteenth Amendment equal protection claims for workplace harassment and wrongful termination arising under § 1981. There, African American petitioners sued their employer under § 1981 for allegedly subjecting them "to a racially hostile work environment, . . . an inferior employee status, and wrongfully terminat[ion]." *Id* at 372. The Court recognized that § 1981's "make and enforce contracts" provision did not protect workers against "harassing conduct that occurred after the formation of the contract," until the 1991 Act explicitly expanded § 1981 to encompass workplace harassment and contract termination. *Id.* at 373 (citing *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), *superseded by* 1991 Act). Because the plaintiffs' causes of action "were made possible by that [1991] Act," the Court held that they "arose under" the 1991 Act and thus were subject to the four-year statute of limitations period specified by 28 U.S.C. § 1658. *Jones*, 541 U.S. at 383.

Defendants acknowledge this potentially contrary authority as "persuasive, but not binding." ECF 27 at 1. They continue to "stand by the argument" that FEPA's two-year statute of limitations should apply in this case. *Id.*

Van Story moves under § 1983, but she asserts violations of her rights under § 1981. *See Farmer v. Ramsay*, 43 F. App'x 547, 553 n. 8 (4th Cir. 2002) (noting that there is "no cause of action based on § 1981 independent of § 1983"); *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008) ("Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983.").

*Crump v. Montgomery Cty. Bd. of Educ.*, PWG-12-3378, 2013 WL 5797362 (D. Md. Oct. 25, 2013), provides guidance. In *Crump*, plaintiff brought suit under § 1983 for a violation of her § 1981 rights. Judge Grimm considered the applicable statute of limitations, stating, *id.* at *5 n. 2:

> Although the Fourth Circuit has not yet spoken on the issue, Defendants concede that Plaintiff's claims are subject to a four-year statute of limitations regardless of whether brought under § 1981 or § 1983. . . . The only circuit court squarely to address the issue has held that, because a wrongful termination claim could not be asserted under § 1983 until after the passage of the 1991 Act, it fell within the four-year limitations period of § 1658. *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008); *see also Harmon v. Patrolman's Benevolent Ass'n*, 199 F. App'x 46 (2d Cir. 2006) ("[T]he applicable statute of limitations on Section 1983 claims is 3 years (or 4 years, if the claims are set forth under 28 U.S.C. § 1658(a) . . . .")). The majority of district courts to confront the issue also have so held. *See, e.g.*, *Mveng–Whitted v. Va. State Univ.*, 927 F. Supp. 2d 275, 278 (E.D. Va. 2013); *DeNigris v. N.Y.C. Health and Hosps. Corp.*, 861 F. Supp. 2d 185, 191 (S.D.N.Y. 2012). Because a wrongful termination action under § 1983 did not exist until after the 1991 Act, I think it likely—though I need not decide here—that the four-year statute of limitation applies.

As Judge Grimm noted in his analysis, the Eleventh Circuit's *Baker* Court applied the four-year statute of limitations to a § 1983 claim alleging violations of § 1981. *Baker*, 531 F.3d at 1338. The *Baker* Court reasoned that in *Jones*, 541 U.S. 368, the Supreme Court adopted a "broad interpretation" of 28 U.S.C. § 1658. Furthermore, the Supreme Court "expressly rejected" a narrow interpretation that would "improperly restrict § 1658 'to cases in which the plaintiff's cause

of action is based solely on a post-1990 statute that establishes a new cause of action without reference to preexisting law.'" *Id.* (quoting *Jones*, 541 U.S. at 381 (citation and quotation omitted)).

Judge Grimm clearly agreed that § 1658's "arising under" language should not be narrowly interpreted to mean civil actions "based solely on" a statute enacted after December 1, 1990. *See, e.g.*, *Williams v. Hawkeye Cmty. Coll.*, 494 F. Supp. 2d 1032, 1041 (N.D. Iowa 2007) ("To hold that . . . § 1658 could never apply to a § 1983 claim would effectively and impermissibly interpret 'arising under' as 'based solely upon.'"). Although Judge Grimm did not need to decide this issue, I am persuaded by his reasoning and by the reasoning of the Eleventh Circuit in *Baker*.

Therefore, pursuant to 28 U.S.C. § 1658, Van Story's cause of action falls under the four-year statute of limitations exception made possible by passage of the 1991 Act. Because plaintiff filed the Motion for Leave on January 18, 2019, plaintiffs' claims are time-barred as to retaliatory or discriminatory acts committed prior to January 18, 2015, but not time barred as to conduct that occurred after January 18, 2015.

## 2. Retaliation

Plaintiff has asserted a retaliation claim against WCHD, and seeks to assert such claims against MacRae and Parks in their individual and official capacities. ECF 21-1, ¶¶ 4-5. As noted, in their opposition to the Motion for Leave, defendants contend that WCHD is an arm of the State and is therefore immune to suit under the Eleventh Amendment. ECF 25 at 3-8. I agree. Accordingly, for the reasons provided earlier, plaintiff's suit is futile as to WCHD. And, as to the proposed additional defendants, *i.e.*, MacRae and Parks, defendants claim that plaintiff fails to establish a causal nexus between a protected activity and an adverse action. *Id.* at 16-23.

As indicated, the elements of a retaliation claim are: (1) the employee engaged in protected activity; (2) the employer took a tangible adverse action against her; and (3) the protected activity and the adverse action were causally connected. *See Boyer-Liberto*, 786 F.3d at 281.

"[I]n the context of a retaliation claim, a 'protected activity' includes an employee's opposition to discriminatory practices in the workplace. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). "To fall under the protection of the opposition clause . . . behavior need not rise to the level of formal charges of discrimination. The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures." *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) (citation omitted).

The Fourth Circuit has "articulated an expansive view of what constitutes oppositional conduct, recognizing that it encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *DeMasters*, 796 F.3d at 417 (internal quotation marks omitted); *see also Stennis v. Bowie State*, 716 Fed. App'x 164, 167 (4th Cir. 2017). In considering whether a plaintiff has engaged in protected activity opposing discriminatory conduct, though individual acts may be scrutinized to determine "their nature, purpose, and nexus to the alleged objective," the plaintiff's conduct must be examined "as a whole." *DeMasters*, 796 F.3d at 418 (emphasis removed). This inquiry first looks to whether the employee "communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009). If so, then the court evaluates whether the practice alleged to be discriminatory by the employee is "actually unlawful"

or, as noted, whether the employee "reasonably believes [it] to be unlawful." *Boyer–Liberto*, 786 F.3d at 282.

The second element is an "adverse action." In *Strothers*, 895 F.3d at 327, the Fourth Circuit explained that an "adverse *employment* action" is not the standard in a retaliation case. (Emphasis added.) In other words, the adverse action "need not be employment or workplace-related in order to sustain a retaliation claim." *Id.* In a retaliation claim, the standard for an adverse action is more lenient than for a substantive discrimination claim. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("*Burlington Northern*") ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.").

In the retaliation context, the plaintiff must show merely that the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citations omitted). In the context of Title VII, the anti-retaliation provision "does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington Northern*, 548 U.S. at 68). Nor do any of the following constitute an adverse action in a retaliation claim: "failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee 'AWOL'; or issuing a personal improvement plan, 'an Attendance Warning,' a verbal reprimand, 'a formal letter of reprimand,' or 'a proposed termination.'" *Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013) (internal quotation marks omitted in part) (quoting *Rock v. McHugh*, 819 F. Supp. 2d 456, 470-71 (D. Md. 2011)). A poor performance review or reprimand does not constitute an adverse action unless it causes "real harm to [the plaintiff's]

employment or is an intermediate step to discharge." *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 423 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (citation omitted); *see also Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003) ("Like a reprimand, a poor performance rating does not in itself constitute an adverse employment action. 'Rather, it is a mediate step, which, if relied upon for a true adverse employment action (e.g., discharge, demotion, etc.) becomes relevant evidence.'") (internal citation omitted) (quoting *Settle v. Balt. Cty.*, 34 F. Supp. 2d 969, 1010 (D. Md. 1999)).

To satisfy the third element—a causal connection between the protected activity and the adverse action—a plaintiff at trial must show that the employer took the adverse action "*because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original). Ordinarily, there must exist "some degree of temporal proximity to suggest a causal connection." *Constantine*, 411 F.3d 474, 501 (4th Cir. 2005). Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal connection exists between the two.'" *Id.* (citation omitted). And, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003)).

The suit against MacRae and Parks in their official capacities "is in all respects, other than name, a suit against the entity." *Vincent v. Prince George's Cty., Md.*; 157 F. Supp. 2d 588, 595 (D. Md. 2001); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("But a suit against a state official in his or her official capacity is not a suit against the official but rather is a

suit against the official's office."); *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Therefore, to the extent, the proposed claim against MacRae and Parks is lodged against them in their official capacity, it would be tantamount to a suit against the WCHD. In turn, that is tantamount to a suit against the State, which is precluded by sovereign immunity.

Van Story alleges several potential retaliatory acts, but all of them are time-barred by the four-year statute of limitations, with the exception of her termination. But, as to the termination, the proposed amended complaint does not plausibly allege a causal relation.

On October 16, 2014, Van Story filed a charge of discrimination with the EEOC. She alleged that the WCHD was attempting to "undermine her authority and ability to execute her duties" and was retaliating against her for "complaining about said actions." *Id.* ¶ 20. Nearly six months later, on April 9, 2015, "Van Story was terminated from her position at WCHD." ECF 21-1, ¶ 23; *see id.* ¶ 44 ("When Dr. Van Story complained about [her] discrimination and retaliation, Ms. Parks escalated her action against Dr. Van Story, including termination."); *see also* ECF 15, ¶ 16.

Therefore, as to the termination, the Motion For Leave, filed on January 18, 2019, was timely. However, the facts as to temporal proximity between plaintiff's initial complaint and her termination are insufficient to show a causal connection. *See, e.g.*, *see Wilcoxon v. DECO Recovery Mgmt., LLC,* 925 F. Supp. 2d 725, 732 (D. Md. 2013) (concluding that four months between the protected activity and alleged retaliatory conduct did not establish "temporal proximity").

To be sure, the Court "'may look to the intervening period for other evidence of retaliatory animus.'" *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3rd Cir. 2000)); *see also Bowman v. Baltimore City Bd. of Sch. Commissioners*, 173 F. Supp. 3d 242, 250 (D. Md. 2016). But, plaintiff makes no allegations regarding the intervening period. *See* ECF 21-1. Accordingly, plaintiff's retaliation claims are futile.

### 3.    Discrimination

Plaintiff asserts a claim of discrimination against Parks. Defendants maintain that plaintiff's claim is time-barred. ECF 25 at 21. Further, they assert that there are no factual allegations that Park's actions were motivated by Van Story's race. *Id.*

The framework of proof for claims of intentional employment discrimination brought under § 1981 and § 1983 is the same as the framework applicable to a claim under Title VII. *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (stating, in case involving employment discrimination claim under Title VII, § 1981, and § 1983, that "the elements required to establish such a case are the same under all three statutes") (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n. 1 (1993)). The elements of a claim of discrimination are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190 (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)); *accord Gerner v. Cnty. of Chesterfield, Va.*, 674 F.3d 264, 266 (4th Cir. 2012).

As indicated, "the existence of some adverse employment action is required" for a plaintiff to prevail on a discrimination claim. *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). An "adverse employment action" is one that "'constitutes a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Disparate treatment occurs when an employer has treated an employee "'less favorably than others because of' a protected trait." *Ricci*, 557 U.S. at 577 (citation omitted). In a disparate treatment case, the plaintiff must establish "'that the defendant had a discriminatory intent or motive' for taking a job related action." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (citation omitted); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000) ("The ultimate question in every disparate treatment case is whether the plaintiff was the victim of intentional discrimination."). "Liability in a disparate-treatment case 'depends on whether the protected trait . . . actually motivated the employer's decision.'" *Raytheon Co.*, 540 U.S. at 52.

Plaintiff's termination is the only adverse employment action alleged by plaintiff. *See Hoyle*, *LLC*, 650 F.3d at 337. But, the Second Amended Complaint contains no factual allegations that Parks terminated Van Story because of a discriminatory intent. Therefore, plaintiff's discrimination claim is futile.

## IV.    Conclusion

For the aforementioned reasons, plaintiff's Motion for Leave is DENIED and defendants' Motion to Dismiss is GRANTED. A separate Order follows.

Date: July 25, 2019                                         _____/s/_____

                                                            Ellen L. Hollander
                                                            United States District Judge